



FILED IN OPEN COURT
U.S.D.C. - Atlanta

MAY 0 2 2023

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk



ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

    *v.*

LAQUETTIA BLANCHARD

Criminal Information

No. 1:23-CR-0114

THE UNITED STATES ATTORNEY CHARGES THAT:

### Count One
### (Conspiracy to Commit Wire Fraud)

1. Beginning on a date unknown, but from at least in or about January 2022, and continuing through in or about June 2022, in the Northern District of Georgia and elsewhere, the Defendant, LAQUETTIA BLANCHARD, did knowingly and willfully combine, conspire, confederate, agree, and have a tacit understanding with Kayricka Wortham a/k/a Kayricka Dupree a/k/a Kayricka Young and others known and unknown to commit wire fraud, that is, to knowingly devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by omission of material facts, and for the purpose of executing the scheme, with the intent to defraud, to cause the transmission of interstate wire communications, in violation of Title 18, United States, Code, Section 1343.

## Background

At all times relevant to this Information:

2. The Defendant, LAQUETTIA BLANCHARD, was a Senior Human Resources Assistant at Amazon.com, Inc. ("Amazon"). She worked at the Amazon Warehouse in Smyrna, Georgia. She had a personal and work relationship with Kayricka Wortham a/k/a Kayricka Dupree a/k/a Kayricka Young.

3. Kayricka Wortham a/k/a Kayricka Dupree a/k/a Kayricka Young was an Operations Manager at Amazon. She worked at the Amazon Warehouse in Smyrna, Georgia. In her position, Wortham supervised others and had the authority to approve new vendors for Amazon. She could also approve the payment of vendor invoices.

4. Brittany Hudson was in a relationship and resided with Wortham. Hudson owned a business, Legend Express LLC, which contracted with Amazon as a Delivery Service Partner. Amazon Delivery Service Partners are independent businesses that partner with Amazon to deliver packages to customers.

5. Demetrius Hines was a Loss Prevention Multi-Site Lead at Amazon. He worked at various Amazon sites, including the Amazon Warehouse in Smyrna, Georgia. In his position, Hines was responsible for preventing loss and protecting people, products, and information at Amazon. He led investigations, conducted interviews, and monitored security risks.

6. Amazon is an American multinational technology company whose business interests include e-commerce, cloud computing, digital streaming, and artificial intelligence. Amazon engages in the online retail sale of a wide range of products, including books, music, computers, and electronics, among numerous other products, which are directly shipped to customers. Amazon is one of the largest technology companies in the United States.

Manner and Means

7. Wortham, Hudson, and others conspired to steal more than $9 million from Amazon. They created fake vendors and submitted more than $10 million in fictitious invoices for those vendors, causing Amazon to transfer approximately $9.4 million to bank accounts controlled by Wortham, Hudson, and co-conspirators.

8. As part of the scheme, Wortham provided fake vendor information to unknowing subordinates and asked them to input the information into Amazon's vendor system. Once the information was entered, Wortham approved the fake vendors, thereby enabling those vendor accounts to submit invoices for payment for goods and services purportedly provided by the vendors to Amazon.

9. Wortham established the fake vendor accounts so that they were associated with bank accounts controlled by her, Hudson, and co-conspirators.

10. After the fake vendor accounts were established, Wortham and Hudson submitted fictitious invoices to Amazon for payment. These invoices falsely

represented that the fake vendors had provided goods and services to Amazon, when in fact they had not. The invoices directed payment to bank accounts controlled by Wortham, Hudson, and co-conspirators.

11. After Amazon received the fictitious invoices, Wortham and others approved them for payment, causing Amazon to transfer funds to the bank accounts controlled by Wortham, Hudson, and co-conspirators.

12. In furtherance of the conspiracy, Wortham and Hudson recruited other individuals to act as purported vendor contacts for the fake vendors entered into Amazon's system. Wortham shared fraudulent proceeds with these co-conspirators by directing payments of fictitious invoices to their bank accounts and by transferring fraudulent proceeds from her accounts to theirs.

13. Wortham recruited Hines into the scheme to establish additional fake vendor accounts. Hines provided information to Wortham to create additional fake vendor accounts. Hines also submitted fictitious invoices. Wortham or Conspirator 2, who was another Operations Manager at Amazon, approved these vendors and invoices for payment.

14. Wortham recruited Defendant BLANCHARD into the scheme to establish additional fake vendor accounts. Defendant BLANCHARD provided information to Wortham to create additional fake vendor accounts. Wortham or Conspirator 2, who was another Operations Manager at Amazon, approved these vendors for payment.

4

15. Defendant BLANCHARD provided information for five individuals with whom she was related or associated to be used in the scheme as contacts for fake vendors. The amount of invoices submitted for the fake vendors associated with Defendant BLANCHARD totals just under $1.5 million. Defendant BLANCHARD and the five individuals received a portion of the fraudulent proceeds paid on these invoices. The five individuals paid or agreed to pay a portion they received to Defendant BLANCHARD.

16. Wortham, Hudson, Hines, Defendant BLANCHARD, Conspirator 2, and others received fraudulent proceeds generated from fake vendor accounts. The invoices directed payment to bank accounts controlled by conspirators, and Wortham transferred fraudulent proceeds from her accounts to other co-conspirators' accounts, including a transfer of approximately $99,999.99 directly from Wortham to Defendant BLANCHARD.

17. After Wortham left Amazon in or about March 2022, she, Hudson, and Hines continued to submit fictitious invoices to Amazon on behalf of the fake vendors they created. Conspirator 2 approved fictitious invoices after Wortham left Amazon. The conspirators continued to receive fraudulent proceeds from the scheme until in or about June 2022.

18. In total, Wortham, Hudson, and co-conspirators submitted more than $10 million in fraudulent invoices to Amazon as part of this scheme.

<u>Overt Acts</u>

19. In furtherance of the conspiracy, and to effect the objects and purposes thereof, Defendant BLANCHARD and co-conspirators committed overt acts within the Northern District of Georgia. Among others, on or about February 12, 2022, in the Northern District of Georgia, Wortham caused to be setup in Amazon's system, and subsequently approved, three fictitious vendors, Beyond One Solution, Greer Services, and Wilbon Hauling. Defendant BLANCHARD provided the individuals' information that Wortham used to create these vendors as part of the conspiracy. Between on or about February 12, 2022 and on or about March 25, 2022, 38 fraudulent invoices totaling $345,158 were submitted for Beyond One Solution, 24 fraudulent invoices totaling $231,936 were submitted for Greer Services, and 26 fraudulent invoices totaling $256,070 were submitted for Wilbon Hauling, all for services purportedly provided to Amazon.

All in violation of Title 18, United States Code, Section 371.

**Forfeiture Provision**

20. Upon conviction of the offense alleged in this Information, the Defendant, LAQUETTIA BLANCHARD, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(2), any property constituting, or derived from, proceeds obtained directly or indirectly, as a result of said violations, including, but not limited to, the following:

MONEY JUDGMENT: A sum of money in United States currency, representing the amount of proceeds obtained as a result of the offense alleged in this Information.

21. If, as a result of any act or omission of the Defendant, any property subject to forfeiture:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

the United States of America intends, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c) and

Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the Defendant up to the value of the forfeitable property.

RYAN K. BUCHANAN
*United States Attorney*

STEPHEN H. MCCLAIN
*Assistant United States Attorney*
Georgia Bar No. 143186

NORMAN L. BARNETT
*Assistant United States Attorney*
Georgia Bar No. 153292

600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181

8